UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BYRON ROOT #220344,

                Petitioner,                            Hon. Paul L. Maloney

v.                                            Case No. 1:18-CV-783

GREGORY SKIPPER,

                Respondent.

_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Root's petition for writ of habeas corpus. In accordance with 28 U.S.C. § 636(b), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of prisoner petitions, the undersigned recommends that Root's petition be denied.

## BACKGROUND

Based on events that occurred on October 12, 2012, Petitioner was charged with: (1) carjacking; (2) armed robbery; (3) fleeing and eluding a police officer; (4) obstructing a police officer or resisting arrest; and (5) operating a motor vehicle while intoxicated. (Trial Transcript, July 11, 2013, at 58-60, PageID.278-279). Several individuals testified at Petitioner's jury trial. The relevant portions of their testimony are summarized below.

**James Karnes**

At approximately 5:30 p.m. on the afternoon of October 12, 2012, Karnes was retrieving something from his vehicle when he was approached by Anne-Marie Phan. (Trial Transcript, July 11, 2013, at 80-82, PageID.284).   When Karnes observed Phan, he realized that she had been "attacked," as the left side of her face was "cut up and bruised."  (*Id.* at 82, PageID.284).   Phan asked for help in response to which Karnes instructed one of his friends to telephone the police.   (*Id.*).

**Anne-Marie Phan**

On the afternoon of October 12, 2012, Phan visited her mother's grave.   (Trial Transcript, July 11, 2013, at 84-86, PageID.285).   After praying for her mother, Phan wandered through the cemetery praying for others she knew.   (*Id.* at 86, PageID.285).   While kneeling in prayer, Phan was attacked by a man.   (*Id.*).   The man shoved Phan into the ground and then began punching her in the face and head. (*Id.* at 86-87, PageID.285-286).   The man told Phan that he had a gun.   (*Id.* at 93, PageID.287).   While being attacked, Phan was able to bite her assailant.   (*Id.* at 90, PageID.286).   Phan was unsure where she bit her assailant, but she was certain that she bit her assailant on "his arm or his hand."   (*Id.*).

After beating Phan, the man departed with Phan's vehicle and cell phone.   (*Id.* at 91-94, PageID.287).   Phan was unable to see her attacker clearly, but she did observe that he was wearing jeans and a white or gray jacket with a hood.   (*Id.* at 87-89, PageID.286).   After her assailant departed, Phan sought help, eventually

encountering James Karnes.   (*Id.* at 94, PageID.287).   After recovering her vehicle, Phan realized that her assailant had also stolen approximately $95-100 in cash from the glove compartment.   (*Id.* at 98, PageID.288).

**Michael Sykes**

As of October 12, 2012, Sykes was employed as a Lansing Township Police Officer.   (Trial Transcript, July 11, 2013, at 102-03, PageID.289-90).    At approximately 5:40 p.m., Sykes was dispatched to investigate a carjacking.   (*Id.* at 103, PageID.290).   Officer Sykes spoke with Anne-Marie Phan, who reported that her assailant was approximately 40-50 years old and was wearing blue jeans and a light-colored hooded sweatshirt.   (*Id.* at 103-05, PageID.290).

**Jason Pung**

As of October 12, 2012, Pung was employed as a City of Lansing Police Officer. (Trial Transcript, July 11, 2013, at 110, PageID.291).   At approximately 5:40 p.m., Pung heard a broadcast describing a carjacking that had just taken place.   (*Id.* at 111, PageID.292).   Shortly thereafter, Pung observed a vehicle matching the description of the stolen vehicle.   (*Id.* at 111-13, PageID.292).   Officer Pung maneuvered behind the stolen vehicle and activated his vehicle's siren and flashing lights.   (*Id.* at 112-15, 119, PageID.292-93, 294).   The driver refused to stop, however, and eventually crashed the vehicle.   (*Id.* at 115-17, PageID.293).

The driver then exited the vehicle and attempted to flee on foot, but was quickly apprehended.  (*Id.* at 117-19, PageID.293-94).   Officer Pung identified Petitioner as the driver of the stolen vehicle.   (*Id.* at 120, PageID.294).   A search of Petitioner revealed that he was in possession of Anne-Marie Phan's cell phone.   (*Id.* at 91, 121-23, PageID.287, 294-95).    Petitioner was later administered a breathalyzer examination, the results of which revealed that his blood alcohol level exceeded the legal limit.   (*Id.* at 119-21, PageID.294).

**Gregory Parrott**

As of October 12, 2012, Parrott was employed as a City of Lansing Police Officer.  (Trial Transcript, July 11, 2013, at 132, PageID.297).   At approximately 5:30 p.m., Parrott was dispatched to assist Officer Pung.   (*Id.* at 132-33, PageID.297).   Officer Parrott arrived at the location where Petitioner crashed and assisted Officer Pung capture and detain Petitioner.   (*Id.* at 133-35, PageID.297-98).

**Byron Root**

Petitioner did not dispute that he was driving Anne-Marie Phan's vehicle on the day in question or that he was intoxicated while doing so, but he denied attacking Phan or stealing her vehicle and phone.   (Trial Transcript, July 11, 2013, at 158-62, 184, PageID.303-04, 310).   On the day in question, Petitioner was wandering around the Lansing area drinking large quantities of beer.   (*Id.* at 143-54, PageID.300-02).   At some point, a man known to Petitioner only as "PM," approached Petitioner and offered to sell him drugs.   (*Id.*at 154-56, PageID.302-03).   Petitioner declined at

4

which point PM asked Petitioner if he was "interested in making money."  (*Id.* at 156, PageID.303).   Petitioner again declined and PM departed.  (*Id.*).

A short time later, however, PM returned.  (*Id.* at 158, PageID.303).   PM was driving a vehicle and told Petitioner that he needed "a big favor."  (*Id.*).   PM asked Petitioner to drive the vehicle to an unidentified man who was waiting at a nearby convenience store.  (*Id.* at 158-60, PageID.303-04).   Petitioner agreed and PM gave Petitioner some cash and a cell phone.  (*Id.* at 160, PageID.304).   Petitioner then drove away toward the convenience store in question.  (*Id.* at 160-61, PageID.304).

Before he could locate the unknown man, however, a police officer pulled up behind Petitioner and activated his vehicle's emergency lights.  (*Id.* at 161, PageID.304).   Petitioner refused to stop and instead attempted to flee.  (*Id.* at 161-62, PageID.304).   Petitioner soon thereafter crashed Phan's vehicle and attempted to flee on foot, but was quickly apprehended.  (*Id.* at 162-65, PageID.304-05).   When he was arrested, Petitioner was wearing jeans and a black leather coat without a hood.  (*Id.* at 166, PageID.305).   Petitioner was also carrying $80 in cash.  (*Id.* at 169, PageId.306).

**Kevin Tubbs**

Tubbs was an acquaintance of Petitioner.   (Trial Transcript, July 11, 2013, at 188-89, PageID.311).   Tubbs was familiar with a man, known as "PM," who sold drugs in the Lansing area.   (*Id.* at 189-91).   Tubbs acknowledged that he previously spoke with Petitioner, while the two were in jail together, about the attack on Anne-Marie Phan.   (*Id.* at 193-95, PageID.312-13).

Following the presentation of evidence, the jury found Petitioner guilty of: (1) carjacking; (2) armed robbery; (3) fleeing and eluding a police officer; (4) obstructing a police officer; and (5) operating a motor vehicle while intoxicated. (Trial Transcript, July 12, 2013, at 59, PageID.279).   As a prior offender with more than twenty prior felony convictions, Petitioner was sentenced to serve 420-700 months on the carjacking and armed robbery convictions, and lesser sentences on the remaining convictions, all sentences to be served concurrently.   (Sentencing Transcript, September 11, 2013, 21-22, PageID.341).   Petitioner was also ordered to pay restitution in the amount of $10,767.99 for the costs of Anne-Marie Phan's medical and car repair bills.   (*Id.* at 22).   Petitioner appealed his convictions in the Michigan Court of Appeals asserting the following claims:

I.      The trial judge engaged in substantial and material misconduct during his questioning of Mr. Root resulting in a violation of his constitutional due process right to a fair trial.

II.     The trial court erred in denying Defendant's motion for a directed verdict.

III.   The trial court violated Mr. Root's due process rights at sentencing by mis-scoring OV-3 and OV-4 with regard to the conviction for assaulting or resisting a police officer.

IV.   The prosecutor engaged in substantial and material misconduct during his closing statements and rebuttal argument by misstating testimony evidence and by engaging in substantial unfounded innuendo, remarks, statements, personal beliefs and opinions in reference to the Defendant as being a liar and guilty of the charges resulting in a violation of Defendant's constitutional due process right to a fair trial.

V.   The governmental failure to investigate, disclose and analyze physical evidence deprived Defendant of due process and a fair trial.

The Michigan Court of Appeals affirmed Petitioner's convictions. *People v. Root*, 2015 WL 728625 (Mich. Ct. App., Feb. 19, 2015).   Petitioner subsequently moved in the Michigan Supreme Court for leave to appeal, asserting the five claims identified above as well as the following additional claims:

I.   Petitioner's rights under the Sixth Amendment's Compulsory Process Clause were violated depriving Petitioner of a meaningful opportunity to present a complete defense.

II.   The transcript of Petitioner's trial does not include two questionable comments the trial judge made during the cross-examination of Petitioner.

The Michigan Supreme Court denied Petitioner's request for relief.   *People v. Root*, 868 N.W.2d 904 (Mich. 2015).

Petitioner later moved in the trial court for relief from judgment asserting the following claims:

I.   The prosecution failed to properly disclose exculpatory evidence that was within the sole possession and control of the State of Michigan.

7

II.     The prosecution failed to properly disclose, destroyed, and spoliated exculpatory physical evidence.

III.    The trial judge made unfairly prejudicial comments during the trial in the presence of the jury, piercing the veil of impartiality, additionally introducing evidence without a proper foundation in law or fact, offering opinion testimony without a proper foundation, entering expert testimony without a proper foundation or qualification, asking questions without any basis in the evidence and offering the judge's personal opinion and bias against the lack of credibility of the Defendant and asserting his personal opinion of the Defendant's guilt.

IV.    Trial counsel and appellate counsel both provided ineffective assistance.

Petitioner's motion for relief from judgment was denied. *People v. Root*, Case No. 12-1167-FC, Opinion and Order (Ingham Cnty. 30th Cir. Ct., Sept. 22, 2016) (ECF No. 343-47). Petitioner unsuccessfully appealed the matter to the Michigan Court of Appeals. *People v. Root*, Case No. 337322, Order (Mich. Ct. App., Aug. 1, 2017) (ECF No.9-8, PageID.665). Likewise, the Michigan Supreme Court rejected Petitioner's request for relief. *People v. Root*, Case No. 156366, Order (Mich., May 1, 2018) (ECF No. 9-9, PageID.731). Petitioner initiated the present action on July 16, 2018, asserting the following claims:

I.     The trial judge engaged in substantial and material misconduct during his questioning of Petitioner.

II.    The trial court erred in denying Petitioner's motion for directed verdict and violated due process rights.

III.    Governmental destruction of exculpatory evidence and preventing Petitioner from accessing defense witness.

IV.    Prosecutorial misconduct during closing and rebuttal argument misstating record evidence prejudicing Petitioner.

8

V.     Trial attorney's ineffective assistance of counsel deprived Petitioner of his constitutional right to counsel.

VI.    Appellate attorney's ineffective assistance of counsel deprived Petitioner of his constitutional right to counsel.

## STANDARD OF REVIEW

Root's petition is subject to the provisions of the Antiterrorism and Effective Death Penalty Act (AEDPA), as it amended 28 U.S.C. § 2254. The AEDPA amended the substantive standards for granting habeas relief under the following provisions:

(d)     An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —

      (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or

      (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The AEDPA has "modified" the role of the federal courts in habeas proceedings to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). As the Supreme Court recently emphasized, this standard is "intentionally difficult to meet." *Woods v. Donald*, 135 S.Ct. 1372, 1376 (2015) (internal quotation omitted).

Pursuant to § 2254(d)(1), a decision is "contrary to" clearly established federal law when "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at an opposite result."  *Ayers v. Hudson*, 623 F.3d 301, 307 (6th Cir. 2010) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)).   A writ may not issue simply because the reviewing court "concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams,* 529 U.S. at 411.   Rather, the Court must also find the state court's application thereof to be *objectively* unreasonable.  *Bell*, 535 U.S. at 694; *Williams*, 529 U.S. at 409-12.

Pursuant to 28 U.S.C. § 2254(d)(2), when reviewing whether the decision of the state court was based on an unreasonable determination of the facts in light of the evidence presented, the "factual determination by [the] state courts are presumed correct absent clear and convincing evidence to the contrary."  *Ayers*, 623 F.3d at 308.   Accordingly, a decision "adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding."  *Ibid.*

As previously noted, § 2254(d) provides that habeas relief "shall not be granted with respect to any claim that was adjudicated on the merits" unless the petitioner can satisfy either subsection therein.   This requirement, however, "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'"  *Harrington v. Richter*, 562 U.S. 86, 100 (2011). Instead, if a state court rejects a federal claim, a federal habeas court "*must presume* that the federal claim was adjudicated on the merits."  *Johnson v. Williams*, 568 U.S. 289, 301 (2013).   If this presumption is overcome, however, the Court reviews the matter de novo.  *See Wiggins v. Smith*, 539 U.S. 510, 533-35 (2003) (reviewing habeas issue *de novo* where state courts had not reached the question).

## ANALYSIS

### I.    Procedural Default

Under the procedural default doctrine, federal habeas review is barred where a state court declined to address a petitioner's claims because of a failure to satisfy state procedural requirements.  *See Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991).   Where a petitioner's claims have been procedurally defaulted, the state court judgment rests on an independent and adequate state ground generally precluding review by a federal court.  *See Coleman*, 501 U.S. at 750-51; *Wainwright v. Sykes*, 433 U.S. 72, 81 (1977); *Harris v. Reed*, 489 U.S. 255, 262 (1989).   If a claim has been procedurally defaulted, federal habeas review is available only if the petitioner can establish either (1) the existence of cause for his default and actual prejudice

11

resulting therefrom, or (2) that the failure to consider the merits of the claim will result in a fundamental miscarriage of justice.  *See Williams v. Bagley*, 380 F.3d 932, 966 (6th Cir. 2004) (citing *Coleman*, 501 U.S. at 750).

Respondent argues that several of the claims asserted by Petitioner in this Court have been procedurally defaulted.  The Court, however, is not obligated to address Respondent's procedural default arguments and can instead simply decide Root's petition on the merits.  *See, e.g., Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) (recognizing that "judicial economy" may justify addressing a habeas petition on the merits rather than addressing complicated procedural default questions).

Rather than attempt to navigate potentially difficult questions of procedural default law, for which there may not be clear answers, and potentially waste scarce judicial resources should the Court's analysis of such later be found in error, the Court opts to simply address Petitioner's claims on the merits.  *See, e.g., McLemore v. Bell*, 503 Fed. Appx. 398, 404 (6th Cir., Oct. 31, 2012) (observing that when facing "the analytical morass in which procedural-default rules ensnare us," "[a]n analysis of the merits of the petitioner's substantive claims presents a more straightforward ground for decision").  The Court finds that Respondent is not prejudiced by such because even addressed on the merits, Petitioner's claims do not entitle him to relief.

## II.    Trial Judge's Questioning of Petitioner

Following the prosecutor's cross-examination of Petitioner, the trial judge briefly questioned Petitioner about an injury Petitioner suffered to his right hand. (Trial Transcript, July 11, 2013, at 185-86, PageID.310).   Petitioner argues that he is entitled to relief because the trial judge's questioning violated his right to a fair trial.

The Fourteenth Amendment to the United States Constitution guarantees to every criminal defendant the right to a "fair trial in a fair tribunal before a judge with no actual bias against the defendant."   *Lyell v. Renico*, 470 F.3d 1177, 1186 (6th Cir. 2006) (quoting *Bracy v. Gramley*, 520 U.S. 899, 904-05 (1997)).   To prevail on his claim of judicial bias, Petitioner must demonstrate that the trial judge exhibited conduct "so extreme as to display clear inability to render fair judgment."   *Lyell*, 470 F.3d at 1186-87 (quoting *Liteky v. United States*, 510 U.S. 540, 551 (1994)).[1]

It is not reasonable to interpret the trial judge's brief questioning of Petitioner as reflecting an inability to act fairly or otherwise secure for Petitioner a fair trial. As noted above, Anne-Marie Phan testified that she bit her assailant on the hand or arm.  (Trial Transcript, July 11, 2013, at 90, PageID.286).  Petitioner, on direct examination, testified about an injury he suffered to his hand.  (*Id.* at 164-65,

---

[1] While *Liteky* addressed the statutory recusal standard for federal judges, the Sixth Circuit has long relied on this decision to govern claims of judicial bias such as advanced by Petitioner.   *See Lyell*, 470 F.3d at 1186; *see also, Mason v. Burton*, 720 Fed. Appx. 241, 245 n.2 (6th Cir., Dec. 21, 2017).

PageID.305).    Following  the  cross-examination  of  Petitioner,  the  trial  judge

questioned  Petitioner  briefly  about  the  injury  to  his  hand.    (*Id.*  at  185-86,

PageID.310).    After  noting  that  Anne-Marie  Phan  testified  that  her  assailant  had

struck  her  in  the  head  with  his  fist,  the  judge  asked  Petitioner  how  he  injured  his

hand.    (*Id.*  at  185).    Petitioner  responded  that  he  was  unsure,  but  that  he  thought

he  injured  his  hand  while  he  was  being  handcuffed.    (*Id.*  at  185-86).

The  Michigan  Court  of  Appeals  rejected  this  claim,  noting  that  "we  do  not

believe  that  it  was  inappropriate  for  the  court  to  generally  elicit  testimony  from

defendant  to  obtain  an  explanation  of  how  defendant  injured  his  hand."    *Root*,  2015

WL  728625  at  *3.    Considering  the  relevant  authority  and  facts,  the  Court  concludes

that  this  decision  is  neither  contrary  to,  nor  involves  an  unreasonable  application  of,

clearly  established  federal  law.    *See, e.g., Copeland v. Walker*,  258  F.Supp.2d  105,

137  (E.D.N.Y.  2003)  (discussing  multiple  instances  in  which  judicial  questioning  of  a

criminal  defendant  did  not  violate  the  defendant's  right  to  a  fair  trial).    Furthermore,

this  decision  was  not  based  on  an  unreasonable  determination  of  the  facts  in  light  of

the  evidence  presented.    Accordingly,  this  claim  raises  no  issue  upon  which  habeas

relief  may  be  granted.

### III.    Petitioner's Motion for Directed Verdict

At the close of the government's case-in-chief, Petitioner moved for a directed verdict of acquittal.   (Trial Transcript, July 11, 2013, at 140-41, PageID.299).   The trial judge denied Petitioner's motion, noting that "it's pretty obvious there is plenty of evidence" supporting Petitioner's guilt.   (*Id.* at 141).   Petitioner argues that he is entitled to relief on the ground that the trial judge erred in denying his motion for directed verdict of acquittal.   But, because this claim implicates state, rather than federal, law it is not cognizable on federal habeas review.  *See, e.g., Holloway v. Palmer*, 2017 WL 4844457 at *3 (6th Cir., Apr. 5, 2017).   Accordingly, this claim raises no issue on which habeas relief may be granted.

### IV.    Failure to Investigate

According to Petitioner, when he was questioned by the police following his arrest, he informed them of PM's involvement in this matter.   (Trial Transcript, July 11, 2013, at 167, PageID.306).   Petitioner instructed the police to dust Anne-Marie Phan's car and cell phone for fingerprints, the implication being that doing so would support his version of events.   (*Id.*).   Petitioner also informed the police that he had (or at one point had) PM's phone number stored in his cell phone, the implication being that the police could use such information to identify and locate PM.   (*Id.*).   Petitioner argues that he is entitled to relief because the police failed to obtain the requested fingerprints or identify and locate PM.

It is well established that the Due Process Clause imposes on the prosecution an affirmative obligation to disclose to a criminal defendant evidence favorable to his guilt or punishment.  *See Brady v. Maryland*, 373 U.S. 83, 87 (1963).  But neither *Brady* nor the Due Process Clause obligates the government to *create* evidence favorable to the defendant.  *See, e.g., Yarbrough v. Bauman*, 2012 WL 6845668 at *14 (E.D. Mich., Nov. 8, 2012) (citations omitted).  To the contrary, "[o]nce the police have sufficient evidence to establish probable cause, they may arrest and proceed against a suspect without conducting a further investigation for exculpatory evidence which may have exonerated the suspect." *Ibid.*

Accordingly, to the extent Petitioner argues that the government was required to conduct its investigation as he desired or that it was obligated to create or discover evidence favorable to his defense, Petitioner is not entitled to relief.  Moreover, to the extent that Petitioner argues that his rights under *Brady* were violated, Petitioner is likewise not entitled to relief because Petitioner has failed to identify any evidence, favorable to his defense, which the prosecution did not timely provide. *See United States v. Dado*, 759 F.3d 550, 559-60 (6th Cir. 2014) (to prevail on a *Brady* claim, the defendant must establish that the prosecution suppressed or withheld material evidence favorable to the defense).

The Michigan Court of Appeals rejected this claim.  *Root*, 2015 WL 728625 at *4.  Considering the relevant authority and facts, the Court concludes that this decision is neither contrary to, nor involves an unreasonable application of, clearly

established federal law.    Furthermore, this decision was not based on an unreasonable determination of the facts in light of the evidence presented. Accordingly, this claim raises no issue upon which habeas relief may be granted.

## V.    Prosecutorial Misconduct

Petitioner alleges that his right to a fair trial was violated by several instances of misconduct by the prosecuting attorney.    Specifically, Petitioner argues that the prosecutor misstated evidence in his closing argument and improperly vouched for the credibility of certain witnesses.    Each of Petitioner's claims is addressed separately below.

When a petitioner makes a claim of prosecutorial misconduct, "the touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor."    *Cockream v. Jones*, 382 Fed. Appx. 479, 484 (6th Cir., June 29, 2010) (quoting *Smith v. Phillips*, 455 U.S. 209, 219 (1982)).    The issue is whether the prosecutor's conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process."    *Gillard v. Mitchell*, 445 F.3d 883, 897 (6th Cir. 2006) (quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)); *see also*, *Givens v. Yukins*, 2000 WL 1828484 at *6 (6th Cir., Dec. 5, 2000) ("[t]he aim of due process is not punishment of society for the misdeeds of the prosecutor but avoidance of an unfair trial to the accused") (quoting *Phillips*, 455 U.S. at 219).

Accordingly, even if the challenged comments were improper, habeas relief is available only where the comments were "so flagrant as to render the entire trial fundamentally unfair." *Gillard*, 445 F.3d at 897.   It must also be remembered that this Court "does not possess supervisory powers over state court trials" as "it is the responsibility of the state courts to police their prosecutors." *Gordon v. Burt*, 2016 WL 4435355 at *11 (W.D. Mich., Aug. 23, 2016) (quoting *Byrd v. Collins*, 209 F.3d 486, 529 (6th Cir. 2000)).

A.      Misstating the Evidence

1.      Anne-Marie Phan's Pockets

Anne-Marie Phan testified that her cell phone and car keys were in her coat pocket prior to being attacked.   (Trial Transcript, July 11, 2013, at 91-94, PageID.287).   As previously noted, both items were in Petitioner's possession when he was captured by police.   Phan was unsure, however, precisely how her assailant obtained these items.   Phan speculated that the items fell out of her pockets while she was being attacked after which her assailant retrieved them.   (*Id.* at 91-94).   In his closing argument, the prosecutor asserted that Petitioner reached into Phan's pockets and took the items in question.   (Trial Transcript, July 12, 2013, at 8-9, 32-33, PageID.320, 326).   Petitioner argues that the prosecutor's argument violated his right to a fair trial.

18

It is undisputed that Anne-Marie Phan was brutally attacked.   It is likewise undisputed that Petitioner was in possession of Phan's cell phone and car keys when he was captured by police.   While Phan speculated that her assailant recovered these items after they fell out of her pocket, such was not definitively established. Whether Phan's assailant obtained the items in question by reaching into her pockets or instead by beating Phan so severely that the items fell out of her coat pockets hardly seems relevant.   Both theories were supported by the evidence.   That the prosecutor argued one plausible theory rather than the other did not violate Petitioner's right to a fair trial because a prosecutor is permitted to "argu[e] reasonable inferences from the evidence."   *Landis v. Galarneau*, 2012 WL 2044406 at *4 (6th Cir., June 7, 2012) (quoting *United States v. Collins*, 78 F.3d 1021, 1039-1040 (6th Cir. 1996)).

The Michigan Court of Appeals rejected this claim, noting that the prosecutor's comments "were supported by the evidence and/or reasonable inferences arising from the evidence."   *Root*, 2015 WL 728625 at *4.   In light of the facts and relevant authority, the Court concludes that this decision is neither contrary to, nor involves an unreasonable application of, clearly established federal law.   Furthermore, this decision was not based on an unreasonable determination of the facts in light of the evidence presented.   Accordingly, this claim raises no issue upon which habeas relief may be granted.

2.    Petitioner's Hand Injury

Petitioner next argues that he is entitled to relief because the prosecutor "went on a harangue about an injury nexus between [his hand] injury and the victim's injury."

Petitioner testified that he was unsure how he injured his hand, but that he thought it occurred when he was being handcuffed.   (Trial Transcript, July 11, 2013, at 164-65, 185-86, PageID.305, 310).   Petitioner also testified that his hand injury was sufficiently severe that he had to be taken to the hospital and have x-rays taken. (*Id.* at 186-87, PageID.310-11).   In closing, the prosecutor argued that Petitioner's testimony regarding his hand injury was simply not believable.   (Trial Transcript, July 12, 2013, at 34-35, PageID.326-27).   Specifically, the prosecutor argued that it was not credible for Petitioner to assert that he could not remember how he suffered a hand injury so severe that it required a hospital visit and x-rays.   (*Id.*).   The Court fails to discern how the prosecutor's comments deprived Petitioner of a fair trial. The prosecutor merely argued that a reasonable inference from inconsistent testimony was that Petitioner had not testified truthfully.   This hardly violated Petitioner's right to a fair trial.   *See Landis*, 2012 WL 2044406 at *4.

The Michigan Court of Appeals rejected this claim, noting that the prosecutor's comments "were supported by the evidence and/or reasonable inferences arising from the evidence." *Root*, 2015 WL 728625 at *4.   Considering the facts and relevant authority, the Court concludes that this decision is neither contrary to, nor involves

an unreasonable application of, clearly established federal law.   Furthermore, this decision was not based on an unreasonable determination of the facts in light of the evidence presented.   Thus, this claim raises no issue upon which habeas relief may be granted.

       B.     Improper Vouching for Witnesses

Petitioner next argues that the prosecutor, by using the phrase "I believe" when discussing the evidence, improperly vouched for the credibility of the various people who testified at trial.

Improper vouching occurs "when a prosecutor supports the credibility of a witness by indicating a personal belief in the witness's credibility thereby placing the prestige of the government behind that witness."   *Wogenstahl v. Mitchell*, 668 F.3d 307, 328 (6th Cir. 2012).   Improper vouching generally occurs when the prosecutor makes "comments that imply that the prosecutor has special knowledge of facts not in front of the jury or of the credibility and truthfulness of witnesses and their testimony."   *Ibid.*

The prosecutor did not run afoul of this requirement.   While the prosecutor did, in fact, use the phrase "I believe. . ." throughout his closing argument, he did not express a personal belief in the veracity of any particular witness or testimony. Instead, the prosecutor spoke in terms of what he believed the evidence had shown. (Trial Transcript, July 12, 2013, at 4-15, 28-35, PageID.319-22, 325-27).   There exists a clear distinction between a prosecutor: (a) asserting that he personally

believes a certain witness, and (b) asserting that he believes the evidence supports finding a certain fact or reaching a particular conclusion.   The prosecutor properly engaged in the latter tactic while avoiding the former.

The Michigan Court of Appeals rejected this claim, noting that the prosecutor's comments "were supported by the evidence and/or reasonable inferences arising from the evidence." *Root*, 2015 WL 728625 at *4.   In light of the facts and relevant authority, the Court concludes that this decision is neither contrary to, nor involves an unreasonable application of, clearly established federal law.   Furthermore, this decision was not based on an unreasonable determination of the facts in light of the evidence presented.   Accordingly, this claim raises no issue upon which habeas relief may be granted.

## VI.    Ineffective Assistance of Counsel

Petitioner asserts that his trial counsel rendered ineffective assistance thereby depriving him of the right to a fair trial.   Specifically, Plaintiff argues this his attorney failed to: (1) conduct an adequate investigation; (2) failed to supervise his private investigator; (3) failed to secure favorable witness testimony; (4) failed to file appropriate motions; and (5) failed to object to certain evidence.   Petitioner further argues that his appellate attorney rendered ineffective assistance by failing to assert on appeal that Petitioner's trial counsel rendered ineffective assistance.

To establish ineffective assistance of counsel, Petitioner must show both deficient performance by his counsel and prejudice resulting therefrom.  *See Premo v. Moore*, 562 U.S. 115, 121 (2011) (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009)).  To establish deficient performance, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness."  *Premo*, 562 U.S. at 121 (quoting *Strickland v. Washington*, 466 U.S. 668, 688 (1984)).  A court considering a claim of ineffective assistance must apply a "strong presumption that counsel's representation was within the 'wide range' of reasonable professional assistance."  *Premo*, 562 U.S. at 121 (quoting *Strickland*, 466 U.S. at 689).  Petitioner's burden is to show that "counsel made errors so serious that [he] was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Premo*, 562 U.S. at 121-22 (quoting *Strickland*, 466 U.S. at 687).

Petitioner must further establish that he suffered prejudice as a result of his attorney's allegedly deficient performance.  Prejudice, in this context, has been defined as "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Premo*, 562 U.S. at 122 (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)); *see also*, *Mahdi v. Bagley*, 522 F.3d 631, 636 (6th Cir. 2008).  In the context of a sentencing proceeding, Petitioner must demonstrate that there exists a reasonable probability that, but for counsel's errors, he would have received a more favorable sentence.  *See, e.g., Stumpf v. Robinson*, 722 F.3d 739, 753-54 (6th Cir. 2013) (to prevail on a claim that counsel rendered

ineffective assistance at sentencing, petitioner must demonstrate that there exists a reasonable probability that absent counsel's errors he would have received a different sentence).

The issue is whether counsel's representation "amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Premo*, 562 U.S. at 122 (quoting *Strickland*, 466 U.S. at 690). This is a heavy burden for Petitioner to meet, because he must establish that his counsel's performance was "so manifestly ineffective that defeat was snatched from the hands of probable victory." *Jacobs v. Mohr*, 265 F.3d 407, 418 (6th Cir. 2001).

As the Supreme Court has made clear, even when reviewing an ineffective assistance of counsel claim *de novo*, "the standard for judging counsel's representation is a most deferential one." *Premo*, 562 U.S. at 122. Likewise, the standard by which petitions for habeas relief are judged is "highly deferential." Thus, when reviewing, in the context of a habeas petition, whether a state court unreasonably applied the *Strickland* standard, review is "doubly" deferential. *Id.* (citations omitted). As the *Premo* Court concluded:

> The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating reasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.* at 122-23 (internal citations omitted).

With respect to Petitioner's claims that his trial counsel failed to conduct an adequate investigation, supervise his private investigator, or secure favorable witness testimony, even if the Court assumes that counsel's performance was deficient, Petitioner has presented absolutely no evidence that he was prejudiced by his counsel's allegedly deficient performance.   Petitioner has presented no evidence that had his attorney undertaken the investigatory steps he argues should have been taken that such would have produced any evidence favorable to his defense. Likewise, Petitioner has failed to identify any witness or potential witness, with testimony favorable to his defense, who his attorney failed to call.

Petitioner's claim that his trial attorney failed to file particular motions or object to certain evidence, the result is the same.   Petitioner faults his attorney for filing to object to the trial judge's questioning of him or the prosecutor's argument concerning his hand injury.   As discussed above, however, there was nothing improper about either circumstance.   Thus, Petitioner cannot establish that he suffered prejudice as a result of his counsel's performance.   Finally, Petitioner claims that his appellate counsel was ineffective for failing to assert the claims of ineffective assistance of trial counsel discussed herein.   Because these claims are without merit, however, Petitioner's claim of ineffective assistance of appellate counsel fails.

Petitioner asserted his claims of ineffective assistance of trial and appellate counsel in his post-conviction motion for relief from judgment.   Petitioner's claims were denied by the trial court.   *People v. Root*, Case No. 12-1167-FC, Opinion and

Order (Ingham Cnty. 30th Cir. Ct., Sept. 22, 2016) (ECF No. 9-9, PageID.731). Considering the relevant facts and authority, the Court concludes that this decision is neither contrary to, nor involves an unreasonable application of, clearly established federal law. Furthermore, this decision was not based on an unreasonable determination of the facts in light of the evidence presented. Accordingly, these claims raise no issue upon which habeas relief may be granted.

## CONCLUSION

For the reasons articulated herein, the undersigned concludes that Petitioner is not being confined in violation of the laws, Constitution, or treaties of the United States. Accordingly, the undersigned recommends that Root's petition for writ of habeas corpus be denied. The undersigned further recommends that a certificate of appealability be denied. *See Slack v. McDaniel*, 529 U.S. 473 (2000); *Miller-El*, 537 U.S. at 336.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date: February 10, 2020          ___/s/ Phillip J. Green_____ _____
                                 PHILLIP J. GREEN
                                 United States Magistrate Judge